## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| **PANHANDLE EASTERN** | ) | |
| **PIPE LINE COMPANY, LP,** | ) | |
| | ) | |
| **Petitioner** | ) | |
| | ) | **CASE NO. 24-1301** |
| **v.** | ) | |
| | ) | |
| **FEDERAL ENERGY REGULATORY** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### PETITION FOR REVIEW

Pursuant to Section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b), Rule 15(a) of the Federal Rules of Appellate Procedure and Circuit Rule 15, Panhandle Eastern Pipe Line Company, LP (Panhandle) petitions for review of the following orders issued by the Federal Energy Regulatory Commission (Commission), Respondent:

1. Panhandle Eastern Pipe Line Company, LP, Docket No. RP19-78-015, "Order Addressing Arguments Raised on Rehearing," 188 FERC ¶ 61,162 (September 9, 2024);

2. Panhandle Eastern Pipe Line Company, LP, Docket No. RP19-78-015, "Notice Of Denial Of Rehearing By Operation Of Law And Providing For Further Consideration," 188 FERC ¶ 62,052 (July 29, 2024); and

3. Panhandle Eastern Pipe Line Company, LP, Docket No. RP19-78-012, "Order Rejecting Refund Report and Directing Further Compliance," 187 FERC ¶ 61,112 (May 28, 2024).

1

Copies of the orders are attached to this filing as Attachment A. In the May 28, 2024 order, the Commission rejected Panhandle's refund report related to the Opinion No. 885 rates and directed Panhandle to file a revised refund report. In the July 29, 2024 notice, the Commission indicated that Panhandle's June 27, 2024 request for rehearing of the Commission's May 28, 2024 order may be deemed to have been denied. In the September 9, 2024 order, the Commission addressed arguments raised on rehearing, modified the discussion in the May 28, 2024 order and continued to reach the same result. Panhandle is thereby aggrieved by the Commission's actions therein and entitled to seek review before this Court. The Commission's associated Opinion Nos. 885, 885-A and 885-B are on appeal to this Court in Case Nos. 20-1419, et al. (consolidated).

Respectfully submitted,

PANHANDLE EASTERN
PIPE LINE COMPANY, LP

/s/ Thomas E. Knight
Thomas E. Knight
Steve Stojic
Locke Lord LLP
701 8th Street, N.W., Suite 500
Washington, DC 20001
Telephone: (202) 220-6922
Facsimile: (202) 220-6945
tknight@lockelord.com
steve.stojic@lockelord.com

*Counsel for Petitioner*

Dated:       September 18, 2024
                 Washington, DC

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| **PANHANDLE EASTERN** | ) | |
| **PIPE LINE COMPANY, LP,** | ) | |
| | ) | |
| **Petitioner** | ) | |
| | ) | **CASE NO. _____** |
| **v.** | ) | |
| | ) | |
| **FEDERAL ENERGY REGULATORY** | ) | |
| **COMMISSION,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, Panhandle Eastern Pipe Line Company, LP makes the following disclosures:

1. Panhandle Eastern Pipe Line Company, LP (Panhandle) is a limited partnership organized and existing under the laws of the state of Delaware and has its principal place of business at 1300 Main Street, Houston, Texas 77002. Panhandle is a natural gas company that is primarily engaged in the business of transporting natural gas in interstate commerce under authorizations granted by and subject to the jurisdiction of the Federal Energy Regulatory Commission.

2. Southern Union Panhandle LLC, an indirect wholly-owned subsidiary of Energy Transfer LP, owns a 1% general partner interest in Panhandle. Energy

Transfer Interstate Holdings, LLC, an indirect wholly-owned subsidiary of Energy Transfer LP, owns a 99% limited partnership interest in Panhandle and a 100% membership interest in Southern Union Panhandle LLC. Energy Transfer LP is a publicly traded master limited partnership (NYSE: ET).

Respectfully submitted,

PANHANDLE EASTERN
PIPE LINE COMPANY, LP

/s/ Thomas E. Knight
Thomas E. Knight
Steve Stojic
Locke Lord LLP
701 8th Street, N.W., Suite 500
Washington, DC 20001
Telephone: (202) 220-6922
Facsimile: (202) 220-6945
tknight@lockelord.com
steve.stojic@lockelord.com

*Counsel for Petitioner*

Dated:      September 18, 2024
              Washington, DC

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 18, 2024 I served a copy of the foregoing document in accordance with the Federal Rules of Appellate Procedure and the Circuit Rules upon the Solicitor of the Federal Energy Regulatory Commission, 888 First Street NE, Washington, DC 20426 and the Secretary of the Federal Energy Regulatory Commission, 888 First Street NE, Washington, DC 20426 and by U.S. Mail to the parties listed below.

Respectfully submitted,
/s/ Thomas E. Knight
Thomas E. Knight

| Party | Served On |
|-------|-----------|
| Ameren Corporation | Regina Y. Speed-Bost<br>200 Massachusetts Ave NW, Floor 7<br>Washington, DC 20001 |
| Ameren Illinois Company | David B. Hennen<br>Ameren Services Company<br>1901 Chouteau Avenue, MC 1310<br>St. Louis, Missouri 63103<br><br>Vonda Seckler<br>Ameren Illinois Company<br>PO Box 66149<br>Saint Louis, Missouri 06149<br><br>Jamie Simler<br>Ameren Services Company<br>1331 Pennsylvania Avenue, NW<br>Washington, DC 20004 |

| Party | Served On |
|---|---|
| Ameren Services Company | Regina Y. Speed-Bost<br>200 Massachusetts Ave NW, Floor 7<br>Washington, DC 20001<br><br>Ashley Dixon<br>Ameren Services Company<br>1901 Chouteau Avenue<br>St. Louis, MO 63103 |
| American Forest & Paper Association | Andrea Chambers<br>DLA Piper<br>500 8th Street NW<br>Washington, DC 20004<br><br>Jonathan Wright<br>Covington & Burling LLP<br>850 Tenth Street, NW<br>Washington, DC 20001 |
| Anadarko Energy Services Company | Chris Barnett<br>Anadarko Energy Services Company<br>1200 Timberloch Place<br>The Woodlands, Texas 77380 |
| Archer Daniels Midland Company | Kelly Daly<br>Snell & Wilmer<br>400 East Van Buren Street, Suite 1900<br>Phoenix, AZ 85004 |
| Atmos Energy Corporation | James Jeffries<br>McGuireWoods, LLP<br>201 North Tryon Street, Suite 3000<br>Charlotte, North Carolina 28202 |
| Black Hills Service Company, LLC | Dari Dornan<br>Black Hills Energy<br>1102 E. 1st Street<br>Papillion, Nebraska 68046<br><br>Christina Ellis<br>Black Hills Utility Holdings, Inc.<br>1731 Windhoek Drive<br>Lincoln, NE 68512 |

| Party | Served On |
|---|---|
| Black Hills Utility Holdings, Inc. | Dari Dornan<br>Black Hills Energy<br>1102 E. 1st Street<br>Papillion, Nebraska 68046<br><br>Christina Ellis<br>Black Hills Utility Holdings, Inc.<br>1731 Windhoek Drive<br>Lincoln, NE 68512 |
| Board of Directors for Utilities of the Department of Public Utilities of the City of Indianapolis d/b/a Citizens Energy Group | James Byrd<br>McCarter & English, LLP<br>1301 K Street N.W., Suite 1000 West<br>Washington, DC 20005<br><br>Michael Allen<br>Citizens Energy Group<br>2020 N. Meridian Street<br>Indianapolis, IN 46202 |
| BP Canada Energy Marketing Corp. | Christopher Heywood<br>BP Energy<br>201 Helios Way<br>Houston, TX 77079<br><br>Rose Mary Vandergrift<br>BP Energy<br>201 Helios Way<br>Houston, TX 77079<br><br>Betsy Carr<br>BP Energy<br>201 Helios Way<br>Houston, TX 77079 |

| Party | Served On |
|---|---|
| CenterPoint Energy Resources Corp. | Debra Ann Palmer<br>Reed Smith<br>1301 K Street, NW<br>Washington, DC 20005<br><br>Patrick H. Peters, III<br>CenterPoint Energy<br>1005 Congress Avenue, Suite 650<br>Austin, TX 78701<br><br>Darrell Williams<br>CenterPoint Energy<br>111 Louisiana Street, #1951<br>Houston, TX 77002<br><br>Yi Huang<br>CenterPoint Energy<br>111 Louisiana Street, B-241<br>Houston, TX 77002<br><br>Jeff Perryman<br>CenterPoint Energy<br>111 Louisiana Street<br>Houston, TX 77002 |
| Chevron Natural Gas | Myra McAbee<br>Chevron USA Inc.<br>1400 Smith Street, Room 06006<br>Houston, TX 77002<br><br>Charles R. Cook<br>Chevron USA Inc.<br>1500 Louisiana Street, 3rd Floor<br>Houston, Texas 77002 |

| Party | Served On |
|---|---|
| Columbia Gas of Ohio, Inc. | Kenneth Christman<br>NiSource Corporate Services<br>501 Technology Drive<br>Canonsburg, PA 15317<br><br>Bryan Little<br>NiSource<br>150 West Market Street, Suite 600<br>Indianapolis, Indiana 46204 |
| Columbia Gas of Pennsylvania, Inc. | Bryan Little<br>NiSource<br>150 West Market Street, Suite 600<br>Indianapolis, Indiana 46204 |
| Concord Energy LLC | Gordon Smith<br>John & Hengerer<br>1730 Rhode Island Avenue, N.W., Suite 600<br>Washington, DC 20036<br><br>Stephen T. Tsai<br>Concord Energy LLC<br>1401 17th Street, Suite 1500<br>Denver, Colorado 80202<br><br>Douglas Fernley<br>Concord Energy<br>1401 17th Street, Suite 1500<br>Denver, Colorado 80202 |
| Constellation Energy Generation, LLC | Carrie Allen<br>Constellation Energy Corp.<br>101 Constitution Avenue, NW, Suite 400 East<br>Washington, DC 20001<br><br>Christopher Wilson<br>Constellation Energy Corp.<br>101 Constitution Avenue, NW, Suite 400 East<br>Washington, DC 20001 |

| Party | Served On |
|---|---|
| Consumers Energy Company | Deborah Moss<br>Consumers Energy Company<br>1730 Rhode Island Ave., N.W., Suite 1007<br>Washington, DC 20036 |
| DCP Midstream, LP | Stephen Van Hooser<br>DCP Midstream, LLC<br>370 17th Street, Suite 2500<br>Denver, CO 80202<br><br>Tyler Culbertson<br>DCP Midstream, LP<br>6900 E. Layton Avenue, Suite 900<br>Denver, CO 80237<br><br>Deena Jordan<br>DCP Midstream, LLC<br>370 17th Street, Suite 2500<br>Denver, CO 80202<br><br>Charles Couch<br>DCP Midstream, LP<br>6900 E. Layton Avenue, Suite 900<br>Denver, CO 80237 |

| Party | Served On |
|---|---|
| Direct Energy Business Marketing, LLC | Mark Haskell<br>Blank Rome LLP<br>1825 Eye Street NW<br>Washington, DC 20006-5403<br><br>Brett Snyder<br>Blank Rome LLP<br>1825 Eye Street NW<br>Washington, DC 20006-5403<br><br>Lamiya Rahman<br>Blank Rome LLP<br>1825 Eye Street NW<br>Washington, DC 20006-5403<br><br>Michael Kaufman<br>Direct Energy Business Marketing LLC<br>1825 K Street, NW, Suite 1203<br>Washington, DC 20006 |
| DTE Gas Company | Leah Chamberlin<br>DTE Gas Company<br>One Energy Plaza, 688 WCB<br>Detroit, Michigan 48226<br><br>Timothy Krysinski<br>DTE Gas Company<br>One Energy Plaza, 1635 WCB<br>Detroit, Michigan 48226 |
| Duke Energy Carolinas, LLC | James Jeffries<br>McGuireWoods, LLP<br>201 North Tryon Street, Suite 3000<br>Charlotte, North Carolina 28202 |

| Party | Served On |
|---|---|
| Duke Energy Indiana, LLC | James Jeffries<br>McGuireWoods, LLP<br>201 North Tryon Street, Suite 3000<br>Charlotte, North Carolina 28202<br><br>Jim J. McClay, III<br>Duke Energy<br>525 S. Tryon Street<br>Charlotte, NC 28202 |
| EQT Energy, LLC | Gordon Smith<br>John & Hengerer<br>1730 Rhode Island Avenue, N.W., Suite 600<br>Washington, DC 20036<br><br>Jason Alter<br>EQT Energy, LLC<br>625 Liberty Avenue<br>Pittsburgh, PA 15222 |
| Exelon Corporation | Susan Bergles<br>Exelon BSC Legal Services<br>1310 Point Street - 8th Floor<br>Baltimore, Maryland 21231<br><br>Christopher A. Wilson<br>Exelon Corporation<br>101 Constitution Ave, NW, Suite 400E<br>Washington, DC 20001<br><br>Lisa Simpkins<br>Exelon Corporation<br>1310 Point Street, No. 9NW21<br>Baltimore, MD 21231 |
| Federal Energy Regulatory Commission | Lance Escher<br>Commission Staff Counsel<br>888 First Street NE, AL-2.2<br>WDC 32-09<br>Washington, DC 20426 |

| Party | Served On |
|---|---|
| Indiana Gas Company, Inc. d/b/a Vectren Energy Delivery of Indiana, Inc. | Heather Watts<br>CenterPoint Energy<br>211 N.W. Riverside Drive<br>Evansville, Indiana 47708<br><br>Emon Mahoney<br>CenterPoint Energy<br>1400 Centerview Drive, Suite 100<br>Little Rock, AR 72211 |
| Interstate Gas Supply, Inc. | Gordon Smith<br>John & Hengerer<br>1730 Rhode Island Avenue, N.W., Suite 600<br>Washington, DC 20036<br><br>Joseph Oliker<br>Interstate Gas Supply, Inc.<br>6100 Emerald Parkway<br>Dublin, Ohio 43016 |
| Kansas Gas Service, A Division of ONE Gas, Inc. | Judy Y. Jenkins Hitchye<br>Kansas Gas Service, A Division of ONE Gas, Inc.<br>7421 W. 129th Street<br>Overland Park, Kansas 66213<br><br>Janet Buchanan<br>Kansas Gas Service, A Division of ONE Gas, Inc.<br>7421 W. 129th Street<br>Overland Park, Kansas 66213<br><br>Kelly A. Daly<br>Snell & Wilmer<br>400 East Van Buren Street, Suite 1900<br>Phoenix, Arizona 85004 |

| Party | Served On |
|---|---|
| Koch Energy Services, LLC | Claire Burum<br>20 Greenway Plaza, Suite 800<br>Houston, TX 77046<br><br>John Wingate<br>Koch Companies Public Sector, LLC<br>4111 E. 37th Street N<br>Wichita, KS 67220 |
| Macquarie Energy LLC | Michael Yuffee<br>Winston Strawn<br>1700 K Street, NW<br>Washington, DC 20006<br><br>Ryan Norfolk<br>Baker Botts<br>700 K Street, NW<br>Washington, DC 20001<br><br>Kevin J. Pooler<br>Macquarie Energy LLC<br>500 Dallas Street, Level 31<br>Houston, Texas 77002 |
| Michigan Gas Utilities | Conor Ward<br>WEC Energy Group, Inc.<br>231 W. Michigan Street, A292<br>Milwaukee, Wisconsin 53203<br><br>BA Martin<br>WEC Energy Group, Inc.<br>231 W. Michigan Street<br>Milwaukee, Wisconsin 53203 |

| Party | Served On |
|---|---|
| Michigan Public Service Commission | David D'Alessandro<br>1775 Pennsylvania Avenue, NW, Suite 800<br>Washington, DC 20006<br><br>Marie Denyse Zosa<br>Stinson LLP<br>1775 Pennsylvania Avenue, NW, Suite 800<br>Washington, DC 20006<br><br>Spencer A Sattler<br>Michigan Attorney General<br>7109 W. Saginaw Hwy., 3rd Floor<br>Lansing, Michigan 48917 |
| MIECO Inc. | Gordon Smith<br>John & Hengerer<br>1730 Rhode Island Avenue, N.W., Suite 600<br>Washington, DC 20036 |

| Party | Served On |
|---|---|
| Missouri Public Service Commission | John D. Borgmeyer<br>Missouri Public Service Commission<br>200 Madison Street<br>Jefferson City, Missouri 65102<br><br>Rodney P. Massman<br>Missouri Public Service Commission<br>200 Madison Street<br>Jefferson City, Missouri 65102<br><br>Shelley S. Brueggemann<br>Missouri Public Service Commission<br>200 Madison Street<br>Jefferson City, Missouri 65102<br><br>Janis Fischer<br>Missouri Public Service Commission<br>200 Madison Street<br>Jefferson City, Missouri 65102<br><br>Valerie Groose<br>Missouri Public Service Commission<br>200 Madison Street<br>Jefferson City, Missouri 65102<br><br>Jennie Wells<br>Missouri Public Service Commission<br>200 Madison Street<br>Jefferson City, Missouri 65102<br><br>Stephen Pearson<br>Spiegel & McDiarmid LLP<br>1875 Eye St, NW, Suite 700<br>Washington, DC 20006 |

| Party | Served On |
|---|---|
| Municipal Gas Commission of Missouri | Douglas Healy<br>3010 E. Battlefield Street, Ste A<br>Springfield, MO 65804<br><br>Stephen Pearson<br>Spiegel & McDiarmid LLP<br>1875 Eye St, NW, Suite 700<br>Washington, DC 20006 |
| NJR Energy Services Company | William Scharfenberg<br>NJR Service Corporation<br>PO Box 1415<br>Wall, New Jersey 07719 |
| Northern Illinois Gas d/b/a Nicor Gas Company | Elizabeth Wade<br>AGL Services Company<br>Ten Peachtree Place NE, Suite 1000<br>Atlanta, GA 30309 |
| Northern Indiana Public Service Company LLC | Bryan Little<br>NiSource Corporate Services<br>150 West Market Street, Suite 600<br>Indianapolis, Indiana 46204<br><br>Debra McCall<br>NiSource Corporate Services<br>150 West Market Street, Suite 600<br>Indianapolis, Indiana 46204 |
| NRG Business Marketing LLC | Jennifer Hsia<br>NRG Business Marketing LLC<br>804 Carnegie Center Drive<br>Princeton, NJ 08540<br><br>Kevin Frank<br>NRG Business Marketing LLC<br>804 Carnegie Center Drive<br>Princeton, NJ 08540 |
| Nucor Steel – Crawfordsville | Damon Xenopoulos<br>Stone Mattheis Xenopoulos & Brew, PC<br>1025 Thomas Jefferson Street NW<br>Washington, DC 20007 |

| Party | Served On |
|---|---|
| Panhandle Municipal Defense Group<br><br>(Village of Franklin, IL; City of Fulton, MO; City of Pittsfield, IL; Village of Pleasant Hill, IL; Village of Riverton, IL; Village of Rossville, IL; Village of Waverly, IL; City of Auburn, IL; Town of Bainbridge, IN; Village of Divernon, IL; City of Hermann, MO; Town of Lapel, IN; City of Macon, MO; Montgomery City, MO; Village of Morton, IL; Village of Pawnee, IL; Town of Pittsboro, IN; Town of Roachdale, IN; City of White Hall, IL; and City of Winchester, IL) | Joseph Fagan<br>Day Pitney LLP<br>555 11th St NW<br>Washington, 20004<br><br>Sophia Browning<br>Day Pitney LLP<br>555 11th St NW<br>Washington, 20004 |
| PCS Nitrogen Fertilizer, L.P. | Joel Greene<br>Duncan Weinberg Genzer Pembroke<br>1667 K Street NW, Suite 700<br>Washington, DC 20006<br><br>Andrea Sarmentero<br>Duncan Weinberg Genzer Pembroke<br>1667 K Street NW, Suite 700<br>Washington, DC 20006 |

| Party | Served On |
|---|---|
| POET Ethanol Products | Rob Anderson<br>POET Ethanol Products<br>3939 N Webb Road<br>Wichita, KS 67226<br><br>Kelly Daly<br>Snell & Wilmer<br>400 East Van Buren Street, Suite 1900<br>Phoenix, AZ 85004 |
| Process Gas Consumers Group | Andrea Chambers<br>DLA Piper<br>500 8th Street NW<br>Washington, DC 20004 |
| Range Resources-Appalachia LLC | John Paul Floom<br>Floom Energy Law PLLC<br>5877 Washington Blvd.<br>P.O. Box 50606<br>Arlington, VA 22205 |
| SEMCO Energy Gas Company | Neil Levy<br>McDermott Will & Emery LLP<br>500 North Capitol Street, NW<br>Washington, DC 20001 |
| Sequent Energy Management, L.P. | Gordon Smith<br>John & Hengerer<br>1730 Rhode Island Avenue, N.W., Suite 600<br>Washington, DC 20036<br><br>Mark Christensen<br>Southern Company Gas<br>1200 Smith Street, Suite 900<br>Houston, Texas 77002 |

| Party | Served On |
|---|---|
| Shell Energy North America (US), L.P. | Brett Snyder<br>Blank Rome LLP<br>1825 Eye Street NW<br>Washington, DC 20006-5403<br><br>Mark Richard Haskell<br>Blank Rome LLP<br>1825 Eye Street NW<br>Washington, DC 20006-5403<br><br>Lamiya Rahman<br>Blank Rome LLP<br>1825 Eye Street NW<br>Washington, DC 20006-5403<br><br>Amy Gold<br>Shell Energy North America (US), L.P.<br>909 Fannin, Plaza Level 1<br>Houston, Texas 77010 |
| Southern Indiana Gas and Electric Company, d/b/a Vectren Energy Delivery of Indiana, Inc. | Heather Watts<br>CenterPoint Energy<br>211 N.W. Riverside Drive<br>Evansville, Indiana 47708 |
| Southwest Energy, L.P. | Gordon Smith<br>John & Hengerer<br>1730 Rhode Island Avenue, N.W., Suite 600<br>Washington, DC 20036<br><br>Darren Edwards<br>Southwest Energy, LP<br>3100 Timmons, Suite 225<br>Houston, Texas 77027 |

| Party | Served On |
|---|---|
| Spire Missouri Inc. | David Abernathy<br>Spire Inc.<br>700 Market Street, 6th Floor<br>St. Louis, MO  63101<br><br>David Yonce<br>Spire<br>700 Market Street<br>St. Louis, MO  63101<br><br>Glodie Bockstruck<br>Spire<br>1318 Arbor Bluff Circle<br>Ballwin, MO 63021 |
| Steel Dynamics, Inc. | Damon Xenopoulos<br>Stone Mattheis Xenopoulos & Brew, PC<br>1025 Thomas Jefferson Street NW, 8th Floor<br>Washington, DC 20007 |
| Symmetry Energy Solutions, LLC | Donna Poresky<br>Symmetry Energy Solutions, LLC<br>1111 Louisiana Street, B-241<br>Houston, TX 77002 |
| Tenaska Marketing Ventures | Gordon Smith<br>John & Hengerer<br>1730 Rhode Island Avenue, N.W., Suite 600<br>Washington, DC 20036<br><br>Tomasz Lange<br>Tenaska Marketing Ventures<br>14302 FNB Parkway<br>Omaha, Nebraska 68154 |

| Party | Served On |
|---|---|
| Union Electric Company d/b/a Ameren Missouri | Regina Y. Speed-Bost<br>200 Massachusetts Ave NW Floor 7<br>Washington, DC 20001<br><br>Brian Daschbach<br>Ameren<br>1901 Chouteau Avenue<br>St. Louis, MO 63103<br><br>Vonda Seckler<br>Ameren<br>PO Box 66149<br>St. Louis, MO 63166-6149<br><br>Tim Eggers<br>Ameren<br>1901 Chouteau Avenue<br>St. Louis, MO 63103<br><br>Jamie Simler<br>Ameren Services Company<br>1331 Pennsylvania Avenue, NW<br>Washington, DC 20004<br><br>C. Drew Cayton<br>FTI Consulting<br>11401 Lamar Avenue<br>Overland Park, KS 66211 |

| United States Steel Corporation | Joseph Fagan<br>Day Pitney LLP<br>555 11th Street NW<br>Washington, DC 20004<br><br>Sophia Browning<br>Day Pitney LLP<br>555 11th Street NW<br>Washington, DC 20004<br><br>David A. Stoner<br>United States Steel Corporation<br>600 Grant Street, RM 2028<br>Pittsburgh, Pennsylvania 15219<br><br>Madison King<br>United States Steel Corporation<br>600 Grant Street, RM 2028<br>Pittsburgh, Pennsylvania 15219<br><br>Carl Fink<br>Blue Planet Energy Law, LLC<br>628 SW Chestnut Street<br>Portland, Oregon 97219 |
| Vectren Energy Delivery of Ohio, Inc. | Heather Watts<br>CenterPoint Energy<br>211 N.W. Riverside Drive<br>Evansville, Indiana 47708 |

| World Fuel Services, Inc. | Robert Fallon<br>Engelman Fallon, PLLC<br>1717 K Street, NW, Suite 900<br>Washington, DC 20006<br><br>Christina Switzer<br>Engelman Fallon, PLLC<br>1717 K Street, NW, Suite 900<br>Washington, DC 20006<br><br>Leonid A. Budyonny<br>World Fuel Services, Inc.<br>9800 NW 41st Street<br>Miami, Florida 33178 |
| XTO Energy, Inc. | Brett Snyder<br>Blank Rome LLP<br>1825 Eye Street NW<br>Washington, DC 20006-5403<br><br>Mark Richard Haskell<br>Blank Rome LLP<br>1825 Eye Street NW<br>Washington, DC 20006-5403<br><br>Lamiya Rahman<br>Blank Rome LLP<br>1825 Eye Street NW<br>Washington, DC 20006-5403<br><br>Matthew Rusmussen<br>XTO Energy, Inc.<br>2277 Springwoods Village Parkway<br>Spring, Texas 77389<br><br>Chris Russo<br>XTO Energy, Inc.<br>2277 Springwoods Village Parkway<br>Spring, Texas 77389 |

# ATTACHMENT A – FERC ORDERS

<u>Panhandle Eastern Pipe Line Company, LP</u>, Docket No. RP19-78-015, "Order
Addressing Arguments Raised on Rehearing," 188 FERC ¶ 61,162 (September 9,
2024)

188 FERC ¶ 61,162
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners: Willie L. Phillips, Chairman;
Mark C. Christie, David Rosner,
Lindsay S. See and Judy W. Chang.

Panhandle Eastern Pipe Line Company, LP                    Docket No.  RP19-78-015

ORDER ADDRESSING ARGUMENTS RAISED ON REHEARING

(Issued September 9, 2024)

1.      On June 27, 2024, Panhandle Eastern Pipe Line Company, LP (Panhandle) filed a
request for rehearing of the Commission's May 28, 2024 order rejecting Panhandle's
refund report and directing further compliance.[1]

2.      Pursuant to *Allegheny Defense Project v. FERC*,[2] the rehearing request filed in this
proceeding may be deemed denied by operation of law.  However, as permitted by
section 19(a) of the Natural Gas Act (NGA),[3] we are modifying the discussion in the
Refund Report Order and continue to reach the same result in this proceeding, as
discussed below.[4]

---

[1] *Panhandle E. Pipe Line Co.*, 187 FERC ¶ 61,112 (2024) (Refund Report Order).
The refund report filing was required by Opinion No. 885-A, which addressed
Panhandle's first general rate proceeding in more than two decades.  *See Panhandle E.
Pipe Line Co.*, 174 FERC ¶ 63,026 (2021) (Initial Decision), *aff'd in part & rev'd in part*
Opinion No. 885, 181 FERC ¶ 61,211 (2022), *order on reh'g*, Opinion No. 885-A, 184
FERC ¶ 61,181 (2023), *order on reh'g*, Opinion No. 885-B, 186 FERC ¶ 61,015 (2024).

[2] 964 F.3d 1 (D.C. Cir. 2020) (en banc).

[3] 15 U.S.C. § 717r(a) ("Until the record in a proceeding shall have been filed in a
court of appeals, as provided in subsection (b), the Commission may at any time, upon
reasonable notice and in such manner as it shall deem proper, modify or set aside, in
whole or in part, any finding or order made or issued by it under the provisions of this
chapter.").

[4] *Allegheny Def. Project*, 964 F.3d at 16-17.  The Commission is not changing the
outcome of the Refund Report Order.  *See Smith Lake Improvement & Stakeholders
Ass'n v. FERC*, 809 F.3d 55, 56-57 (D.C. Cir. 2015).

Docket No. RP19-78-015                                                                    - 2 -

## I.   **Background**

3.      As explained in Opinion No. 885-A,[5] this proceeding is the result of three
consolidated proceedings that were set for hearing and addressed in Opinion No. 885:
(1) an NGA section 5[6] proceeding resulting from Panhandle's FERC Form No. 501-G
filing, among other things in Docket No. RP19-78; (2) an NGA section 5 proceeding
resulting from Southwest Gas Storage Company's FERC Form No. 501-G filing, among
other things in Docket No. RP19-257, and (3) Panhandle's 2019 NGA section 4[7] rate
filing proceeding in Docket No. RP19-1523.

4.      On December 16, 2022, the Commission issued Opinion No. 885, which, as
relevant here, required Panhandle to submit a compliance filing consistent with the
findings therein, and to recalculate Panhandle's rates accordingly.[8]  Panhandle filed its
compliance filing on February 14, 2023, as corrected on February 27, 2023.  The
compliance filing included *pro forma* tariff records, which the Commission accepted on
May 26, 2023.[9]  In the Compliance Order, the Commission directed Panhandle to file
actual tariff records within 30 days, with an effective date of March 1, 2020.

5.      On June 26, 2023, Panhandle made an additional compliance filing to move the
actual tariff records into effect.  On September 25, 2023, the Commission issued Opinion
No. 885-A directing Panhandle to provide refunds and a report to the Commission
consistent with sections 154.501 and 154.502 of the Commission's regulations within 60
days of the date of the order.[10]

6.      In its November 30, 2023 refund report filing, Panhandle stated that it provided
the required refunds to its shippers on November 17, 2023.  Panhandle's reservation and
usage rates for transportation rate schedules include three subcomponents:  (1) Field Zone
Transmission Charge; (2) Market Zone Access Charge; and (3) Market Zone Mileage

---

[5] This proceeding has a lengthy background, which is detailed in prior orders.  *See*
Opinion No. 885-A, 184 FERC ¶ 61,181 at PP 5-18 (detailing background and matters
covered by Opinion No. 885-A); Opinion No. 885, 181 FERC ¶ 61,211 at PP 6-10
(detailing procedural history).

[6] 15 U.S.C. § 717d.

[7] 15 U.S.C. § 717c.

[8] Opinion No. 885, 181 FERC ¶ 61,211 at ordering paras. (B)-(C).

[9] *Panhandle E. Pipe Line Co.*, 183 FERC ¶ 61,148 (2023) (Compliance Order).

[10] Opinion No. 885-A, 184 FERC ¶ 61,181 at PP 29-31.

Charge.[11]  Panhandle's firm storage rates include three charges:  (1) Deliverability;
(2) Capacity; and (3) Injection/Withdrawal.[12]  Panhandle calculated refunds by
comparing the subcomponents of the rates proposed in its NGA section 4 rate case
(Proposed Section 4 Rates) relative to the rates Panhandle would have collected under the
Commission-approved rates (Opinion No. 885 Rates), subject to the refund floor of the
rates in effect before the end of the suspension period on March 1, 2020 (Pre-Existing
Lawful Rates).[13]

7.     In the Refund Report Order, the Commission found that Panhandle used the
appropriate refund floor in calculating refunds by providing refunds for amounts
collected under the Proposed Section 4 Rates in excess of what it would have collected
under the Opinion No. 885 Rates, but not lower than what it would have collected under
the Pre-Existing Lawful Rates (the refund floor).[14]  The Commission determined,
however, that Panhandle's method of separately calculating refunds for each
subcomponent of its rates departed from judicial and Commission precedent, which led to
miscalculations of the refunds.[15]  As a result, the Commission directed Panhandle to
recalculate each customer's refunds on a contract-by-contract-basis with the corrected
interest amounts.  For each contract, Panhandle was directed to determine refunds based
on a comparison of the Proposed Section 4 Rate revenues for each shipper's movement
and the greater of Opinion No. 885 Rate revenues or the Pre-Existing Lawful Rate
revenues for each movement, plus interest.  The Commission made clear in the Refund

---

[11] Panhandle's usage rate also includes an Annual Charge Assessment Commodity
Rate.  Panhandle's tariff includes the rates for each reservation and usage rate
subcomponent.  *See, e.g.*, Panhandle Eastern Pipe Line Company, LP, Fourth Revised
Volume No. 1, Rate Schedule FT (Currently Effective Rates) (36.0.0) (listing the Field
Zone Transmission Charge, the Market Zone Access Charge, and the Market Zone
Mileage Charge (which applies to each 100 miles) to develop reservation and usage
rates).

[12] Panhandle's Interruptible Storage Rates include an Inventory Charge and an
Injection/Withdrawal Charge.  *See* Panhandle Eastern Pipe Line Company, LP, Fourth
Revised Volume No. 1, Rate Schedule IIO,(Currently Effective Rates) (23.0.0);
Panhandle Eastern Pipe Line Company, LP, Fourth Revised Volume No. 1, Rate
Schedule IFS (Currently Effective Rates) (10.0.0).

[13] Refund Report Order, 187 FERC ¶ 61,112 at P 4.

[14] *Id*. P 14 (citing *Distrigas of Mass. Corp. v. FERC*, 737 F.2d 1208, 1224 (1st Cir.
1984); *FPC v. Sunray DX Oil Co.*, 391 U.S. 9, 22-25 (1968) (*Sunray*) ("[T]he pre-
existing lawful rate provides a refund floor in a section 4 proceeding.")).

[15] *Id.* P 16.

Report Order that "the refund floor shall apply to total revenues, not individual rate components."[16]

## II.    Panhandle's Rehearing Request

8.    On rehearing, Panhandle contends that the Commission correctly found that the calculation of refunds is governed by NGA section 4(e) and that Panhandle used the appropriate refund floor in calculating refunds.[17]  However, Panhandle asserts that the Commission erred in its finding that refunds should be based on total revenues rather than subcomponents.[18]  Panhandle argues that the Commission's analysis inappropriately combines revenues from tariff rate increases above the refund floor and tariff rate decreases below the refund floor.[19]  Panhandle claims the Commission's method disregards express language in NGA section 4(e), which Panhandle suggests only allows refunds of a tariff rate increase and only for the portion of the increased rate found not to be justified.[20]  Panhandle argues that the Commission's method impermissibly seeks to "include revenues from Tariff rate decreases that are below the refund floor in the calculation of refunds for Tariff rate increases that are above the refund floor."[21]  Panhandle contends that the Commission cites no authority for applying the refund floor to total revenues instead of individual rate components—particularly given the express NGA section 4(e) language establishing the refund floor based on tariff "rates."[22]  Panhandle argues that "when the Tariff reservation rate or Tariff commodity rate was decreased below the pre-existing Tariff rate," no refunds should be "provided because there [is] nothing to refund."[23]

9.    Panhandle maintains that it did not calculate refunds by looking at subcomponents of its rates, since each of the alleged subcomponents had its own reservation rate and

---

[16] *Id.* P 17.

[17] Request for Rehearing at 6-9.

[18] *Id.* at 9-22.

[19] *Id.* at 9.

[20] *Id.* at 9-10 (citing 15 U.S.C. § 717c(e)).

[21] *Id.* at 10.

[22] *Id.*

[23] *Id.* at 11.

commodity rate set out in its tariff.[24]  As a result, Panhandle claims it is improper to combine the subcomponents into "one filed rate."[25]  Panhandle states that it calculated refunds by comparing the rates that are or were specifically stated in its tariff— Proposed Section 4 Rates, the Opinion No. 885 Rates, and the Pre-Existing Lawful Rates —and provided refunds for the portion of the increased tariff rate found not justified, where the tariff was increased above the existing tariff rate, but did not provide refunds where the tariff was decreased below the refund floor.[26]  Panhandle argues that the Commission weighs whether each rate is just and reasonable independently and that they can be increased or decreased separately in a section 4 rate case.[27]  Panhandle argues that it designs its tariff rates in ways that are similar to the tariff rates of other interstate pipelines, including the existence of different rates for different areas of the pipeline and separate reservation rates and commodity rates.[28]  Panhandle provides examples where it claims the usage of the total revenues method led to higher refunds when compared with refunds calculated based on comparing subcomponents.[29]

10.     Panhandle argues that the total revenues method goes against precedent.[30] Panhandle states that, contrary to *Sunray*'s reasoning, the total revenues method results in a situation where Panhandle is "considerably worse off" than if Panhandle had filed to increase all tariff rates above the refund floor.[31]  While acknowledging that the precedent cited by the Commission supports the proposition that "demand and commodity components may be properly considered together as one filed rate charge for one rate increase for one service for purposes of calculating refunds," Panhandle rejects the idea that this suggests that Field Zone Transmission Charges, Market Zone Transmission

---

[24] *Id.* at 12.

[25] *Id.* at 13.

[26] *Id.*

[27] *Id.*

[28] *Id.* at 14.

[29] *Id.* at 15-16 and attach. 1.

[30] *Id.* at 17-18 (citing *Sunray*, 391 U.S. 9; *Distrigas*, 737 F.2d at 1224).

[31] *Id.* at 18.

Charges, and Market Zone Mileage Charges subcomponents can be similarly combined for purposes of calculating refunds.[32]

11.     Panhandle maintains that the Commission's requirement that Panhandle apply a "one filed rate" method in a section 4 rate case involving both tariff rate increases and decreases fails to address different facts and can lead to arbitrary and capricious refund amounts.[33]  Panhandle contends that the "one filed rate" method has no relationship to the portion of the increased tariff rate above the pre-existing tariff rate found not justified that should be refunded.[34]  In support of this argument, Panhandle provides several examples where it claims that more refunds were required under the "one filed rate" method when compared with refunds due based on comparing subcomponents.[35]

## III.   **Discussion**

12.     We sustain the result of the Refund Report Order.  We continue to find that Panhandle's method of separately calculating refunds for each subcomponent of its rates departs from judicial and Commission precedent, which led to miscalculations of the refunds in this case.[36]  As noted in the Refund Report Order, under Commission policy, pipelines should calculate refunds by using "the entirety of the revenues derived from a rate schedule" as the standard,[37] and that means the subcomponents are considered together as one filed rate.[38]  Applying this precedent, the Commission appropriately found that Panhandle's one filed rate for its transportation rate schedules included all

---

[32] *Id.* at 19.

[33] *Id.* at 22-29.

[34] *Id.* at 24.

[35] *Id.* at 23-28.

[36] Refund Report Order, 187 FERC ¶ 61,112 at P 16.

[37] *Id.* (quoting *Kern River Gas Transmission Co.*, Opinion No. 486-C, 129 FERC ¶ 61,240, at P 195 (2009) (citing *Nw. Pipeline Corp.*,76 FERC ¶ 61,068, at 61,425 (1996)); *Panhandle E. Pipe Line Co.*, 73 FERC ¶ 61,287, at 61,790 (1995); *ANR Pipeline Co.*, 85 FERC ¶ 61,231, at 61,968 (1998)).

[38] *Id.* (citing Opinion No. 486-C, 129 FERC ¶ 61,240 at P 195; *E. Gas Transmission & Storage, Inc.*, 178 FERC ¶ 61,098, at P 12 (2022) ("The Commission has also held that the reservation and usage components of the rate for a particular service are properly considered as one filed rate charge.")).

three subcomponents, given that shippers cannot take service without paying for all subcomponents.**39**

13.    We are not persuaded by Panhandle's claim that the Commission's method disregards the express language of NGA section 4(e), which Panhandle states establishes "a refund floor on 'rates'" that is "limited to the 'portion' of the increased Tariff rate found not justified that is above the refund floor."**40**  Panhandle reads the language of NGA section 4(e) to require the Commission to limit refunds based on a pipeline's tariff designations;**41** however, as a practical matter, tariff designations, while labelled as a rate in the tariff, are in fact subcomponents of the total rate charged to shippers for a particular service pursuant to a particular rate schedule.**42**  Nothing in the language of NGA section 4(e) limits the definition of "increased rates" to the rate subcomponents that the pipeline elected to designate in its tariff.  In fact, in granting the Commission NGA section 4(e) refund authority, "Congress did not specify how the refunds should be computed; this [ ] was left to the discretion of the agency."**43**  It is well-established that "[a]n agency's discretion is at its zenith when it is fashioning" such remedies.**44** Panhandle's inflexible interpretation of NGA section 4(e) could lead to arbitrary outcomes, given that tariff designations can vary from tariff to tariff at each pipeline's discretion.  By contrast, the Commission's interpretation comports with the Commission's authority under section 4(e), properly takes into account the Commission's remedial discretion, and is consistent with precedent establishing that rate subcomponents together constitute one filed rate (rather than multiple filed rates) for the purpose of refunds.**45**

---

**39** Ameren Companies Protest at 3.

**40** Request for Rehearing at 3.

**41** *See, e.g., id.* at 13 ("[T]he only rates in the Tariff are the rates that are specifically stated therein.").

**42** Refund Report Order, 187 FERC ¶ 61,112 at P 16.

**43** *See*, *e.g.*, *Belco Petroleum Corp. v. FERC*, 589 F.2d 680, 686 (D.C. Cir. 1978).

**44** *Niagara Mohawk Power Corp. v. FPC,* 379 F.2d 153, 159 (D.C. Cir. 1967); *see e.g., Towns of Concord v. FERC*, 955 F.2d 67, 76 (D.C. Cir. 1992); *Pub. Utils. Comm'n of Cal. v. FERC*, 462 F.3d 1027, 1053 (9th Cir. 2006); *Ne. Utils. Serv. Co. v. FERC*, 993 F.2d 937, 952-53 (1st Cir. 1993).

**45** *E. Gas Transmission & Storage*, 178 FERC ¶ 61,098 at P 12.

14.      We disagree with Panhandle's contention that Panhandle could calculate refunds
based on rate subcomponents because each subcomponent had its own reservation rate
and commodity rate set out in the tariff.[46]  We do not consider this factor to be
dispositive.  "The determination of what [refund] methodology is reasonable in a
particular case can be a complex question of fact, policy, and law."[47]  In selecting a
methodology, the Commission considers how the pipeline changed the services it
provided between rate cases, "what specific refunds would result under each feasible
refund methodology," and "what rate increases are due to cost of service increases (or
billing determinant decreases) as opposed to cost allocation changes."[48]  In this case,
shippers cannot take service without paying for all of the rate subcomponents,[49] and so
considering them all together is appropriate under "the entirety of the revenues derived
from a rate schedule" standard for calculating refunds.[50]  Additionally, any refund
calculation fluctuations attributable to cost shifts between subcomponents would be
arbitrary given that shippers must pay for all subcomponents to receive service.[51]  This
further illustrates that the Commission appropriately considered total revenues to help
maintain accurate comparability.  Maintaining such comparability helps fulfill the
purpose of refunds, which is to place customers in "approximately the same position they
would have been in."[52]

15.      We are also not convinced by Panhandle's argument that because the Commission
weighs whether each subcomponent is just and reasonable independently, and can
increase or decrease each subcomponent separately in a section 4 rate case, the
subcomponents should be considered separately for refund purposes here.[53]  First, we
disagree with the premise that the interaction of all components in a larger rate schedule
is irrelevant when considering whether an individual subcomponent is just and reasonable

---

[46] Request for Rehearing at 12.

[47] *ANR Pipeline Co.*, 85 FERC at 61,968.

[48] *Id.*

[49] Ameren Companies Protest at 3.

[50] Refund Report Order, 187 FERC ¶ 61,112 at P 16.

[51] Ameren Companies Protest at 3.

[52] *Dominion Energy Transmission, Inc.*, 173 FERC ¶ 61,248, at P 147 n.299
(2020) (quoting *Gulf Oil Corp.*, 56 FPC 3492 (1976)).

[53] Request for Rehearing at 13.

or whether a subcomponent rate should be changed.[54]  Second, the question of the appropriate method for calculating refunds involves consideration of what method will best place customers in "approximately the same position they would have been in."[55]  As discussed above, such an evaluation requires examining "the entirety of the revenues derived from a rate schedule."[56]  Proceedings considering whether subcomponents are just and reasonable or whether a subcomponent rate should be increased or decreased may require different considerations or methods depending on the nature of the request. How subcomponents are evaluated in one context does not logically dictate how they should be evaluated in the other.

16.     Panhandle's argument that it designs its tariff rates in ways that are similar to the tariff rates of other interstate pipelines also is not persuasive.[57]  Panhandle provides no examples of similar refund situations involving other pipelines.  Regardless, "the fact that the Commission grants relief on one set of facts does not require it to do so on another."[58]

17.     We also are not persuaded by Panhandle's examples suggesting that using the total revenues method led to higher refunds when compared with refunds calculated based on only subcomponents.[59]  This difference in outcome does not provide a reason to reverse the Refund Report Order; as discussed above, our concerns regarding Panhandle's proposed refunds relate to the methodology Panhandle employs.

18.     Similarly, we disagree with Panhandle's assertion that the total revenues method violates *Sunray* because it results in a situation where Panhandle is "considerably worse

---

[54] *See Kern River Gas Transmission Co.*, 129 FERC ¶ 61,240 at P 156, *order on reh'g,* 133 FERC ¶ 61,162 (2010) ("When a pipeline files a rate increase under NGA section 4, the pipeline bears the burden of proving the justness and reasonableness of its proposed increase.  This includes proving that all of the cost and throughput components of the rate increase in the filing are just and reasonable under NGA section 4, even when the pipeline has not proposed to change certain of those components."); *Indep. Power Producers of N. Y., Inc. v. N.Y. Indep. Sys. Operator, Inc*., 125 FERC ¶ 61,311, at P 33 (2008) ("In setting a just and reasonable rate, the Commission does not look at a single component but rather, looks at all components").

[55] *Dominion Energy*, 173 FERC ¶ 61,248 at P 147 n.299.

[56] Refund Report Order, 187 FERC ¶ 61,112 at P 16.

[57] Request for Rehearing at 14.

[58] *French's Est. v. FERC*, 603 F.2d 1158, 1166 (5th Cir. 1979).

[59] Request for Rehearing at 15-16, 23-28.

Docket No. RP19-78-015                                                                                    - 10 -

off" than if Panhandle had filed to increase all tariff rates above the refund floor.[60]  As Panhandle acknowledges, *Sunray* holds that the pre-existing lawful rate constitutes the refund floor because otherwise a firm proposing an increase could "end up considerably worse off than if it had not requested one."[61]  The cited precedent does not require that a firm be at least as well off as it would be if it had filed to increase all tariff rates across all rate subcomponents, but rather that a firm should not be made worse off than if it had never filed an NGA section 4 rate case.  Even if *Sunray* were apposite, Panhandle provides no data to support the proposition that Panhandle is comparatively worse off than if it had never filed an NGA section 4 rate case but, rather, simply claims this as fact.

19.    Further,  Panhandle does not make a meaningful attempt to distinguish the precedent cited in the Refund Report Order supporting the proposition that rate subcomponents should be considered together as one filed rate.[62]  While acknowledging that these cases support the proposition that "the demand and commodity components may be properly considered together as one filed rate charge for one rate increase for one service for purposes of calculating refunds," Panhandle merely notes that none of the cases involved identical subcomponents to those present here.[63]  However, Panhandle does not explain why the same reasoning would not apply to the subcomponents presented here given Commission policy that "the entirety of the revenues derived from a rate schedule" should be considered when calculating refunds.[64]

20.    We disagree with Panhandle's contention that the Commission's requirement that Panhandle apply a "one filed rate" method is arbitrary and capricious as applied to the facts of this proceeding.[65]  As discussed above, this requirement is consistent with Commission policy and precedent.

---

[60] *Id.* at 18.

[61] *Id.* at 17 (quoting *Distrigas,* 737 F.2d at 1224).

[62] *See* Refund Report Order, 187 FERC ¶ 61,112 at P 16 n.39 (collecting cases).

[63] Request for Rehearing at 19.

[64] Refund Report Order, 187 FERC ¶ 61,112 at P 16 (quoting Opinion No. 486-C, 129 FERC ¶ 61,240 at P 195).

[65] Request for Rehearing at 22-29.

Docket No. RP19-78-015                                        - 11 -

<u>The Commission orders</u>:

      In response to Panhandle's request for rehearing, the Refund Report Order is hereby modified and the result sustained, as discussed in the body of this order.

By the Commission.

( S E A L )

                              Debbie-Anne A. Reese,
                               Acting Secretary.

Document Content(s)

RP19-78-015.docx.......................................................1

<u>Panhandle Eastern Pipe Line Company, LP</u>, Docket No. RP19-78-015, "Notice Of Denial Of Rehearing By Operation Of Law And Providing For Further Consideration," 188 FERC ¶ 62,052 (July 29, 2024)

188 FERC ¶ 62,052
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Panhandle Eastern Pipe Line Company, LP                Docket No. RP19-78-015

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND
PROVIDING FOR FURTHER CONSIDERATION

(July 29, 2024)

Rehearing has been timely requested of the Commission's order issued on May 28, 2024, in this proceeding. *Panhandle Eastern Pipe Line Company, LP*, 187 FERC ¶ 61,112 (2024). In the absence of Commission action on a request for rehearing within 30 days from the date it is filed, the request for rehearing may be deemed to have been denied. 15 U.S.C. § 717r(a); 18 C.F.R. § 385.713 (2023); *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc).

As provided in 15 U.S.C. § 717r(a), the request for rehearing of the above-cited order filed in this proceeding will be addressed in a future order to be issued consistent with the requirements of such section. As also provided in 15 U.S.C. § 717r(a), the Commission may modify or set aside its above-cited order, in whole or in part, in such manner as it shall deem proper.

Debbie-Anne A. Reese,
Acting Secretary.

Document Content(s)

RP19-78-015.docx.......................................................1

<u>Panhandle Eastern Pipe Line Company, LP</u>, Docket No. RP19-78-012, "Order Rejecting Refund Report and Directing Further Compliance," 187 FERC ¶ 61,112 (May 28, 2024)

187 FERC ¶ 61,112
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Willie L. Phillips, Chairman;
                            Allison Clements and Mark C. Christie.

Panhandle Eastern Pipe Line Company, LP             Docket No. RP19-78-012

ORDER REJECTING REFUND REPORT AND DIRECTING FURTHER
COMPLIANCE

(Issued May 28, 2024)

1.      On November 30, 2023, Panhandle Eastern Pipe Line Company, LP (Panhandle) filed its refund report, pursuant to Opinion No. 885-A[1] and sections 154.501 and 154.502 of the Commission's regulations.[2]  For the reasons discussed below, we reject Panhandle's refund report and direct further compliance.  Specifically, we direct Panhandle to file a corrected refund report within 30 days of the date of this order.  We also direct Panhandle to issue additional refunds, with interest, within 30 days of the date of this order, as necessary.  Panhandle is authorized to bill the shippers who received refunds in error with interest computed in accordance with section 154.501(d) of the Commission's regulations within 30 days of the date of this order.[3]

## I.     **Background and Filing**

2.      On August 30, 2019, Panhandle filed pursuant to section 4 of the Natural Gas Act (NGA) a rate case seeking to change its rates, among other things, effective October 1, 2019.  On September 30, 2019, the Commission accepted and suspended the tariff records, effective March 1, 2020, subject to refund and established hearing procedures and a technical conference.[4]  On December 16, 2022, the Commission issued an order

---

[1] *Panhandle E. Pipe Line Co.*, Opinion No. 885-A, 184 FERC ¶ 61,181 (2023).

[2] 18 C.F.R. §§ 154.501-502 (2023).

[3] *Id.* § 154.501(d).

[4] *Panhandle E. Pipe Line Co., LP*, 168 FERC ¶ 61,208 (2019).

affirming in part and reversing in part, an Initial Decision[5] regarding Panhandle's rates.[6] On February 14, 2023, Panhandle submitted a filing, as corrected on February 27, 2023, in compliance with the directives of Opinion No. 885 (Compliance Filing). On May 26, 2023, the Commission accepted Panhandle's Compliance Filing.[7] On September 25, 2023, the Commission issued an order on rehearing and compliance that directed Panhandle to provide refunds and a report to the Commission consistent with sections 154.501 and 154.502 of the Commission's regulations within 60 days of the date of the order.[8]

3.       In its November 30, 2023 refund report filing, Panhandle states that it provided the required refunds to its shippers on November 17, 2023. Panhandle also seeks waiver to the extent that Ordering Paragraph (A) of Opinion No. 885-A could be interpreted to require that the refund report was due on November 27, 2023. On January 23, 2024, Commission staff issued data requests to Panhandle regarding its refund calculations. On February 1, 2024, Panhandle submitted its responses to staff's data requests. Panhandle's responses included native format workpapers, corrected interest rate calculations, and narrative explanations of its workpapers.

4.       In calculating refunds, Panhandle states that it looked at each rate subcomponent for a service. Panhandle's tariff separately enumerates subcomponents of the reservation and usage rates for its transportation and storage rate schedules. Panhandle's reservation and usage rates for transportation rate schedules include three subcomponents: (1) Field Zone Transmission Charge; (2) Market Zone Access Charge; and (3) Market Zone Mileage Charge.[9] Panhandle's firm storage rates include three charges: (1)

---

[5] *Panhandle E. Pipe Line Co.*, 174 FERC ¶ 63,026 (2021) (Initial Decision).

[6] *Panhandle E. Pipe Line Co.*, Opinion No. 885, 181 FERC ¶ 61,211 (2022), *order on reh'g*, Opinion No. 885-A, 184 FERC ¶ 61,181, *order on reh'g*, Opinion No. 885-B, 186 FERC ¶ 61,015 (2024).

[7] *Panhandle E. Pipe Line Co.*, 183 FERC ¶ 61,148 (2023) (Compliance Order).

[8] Opinion No. 885-A, 184 FERC ¶ 61,181.

[9] Panhandle's usage rate also includes an Annual Charge Assessment Commodity Rate. Panhandle's tariff includes the rates for each reservation and usage rate subcomponent. *See, e.g.*, Panhandle Eastern Pipe Line Company, LP, Fourth Revised Volume No. 1, Rate Schedule FT, Currently Effective Rates (Version No. 36.0.0) (listing the Field Zone Transmission Charge, the Market Zone Access Charge, and the Market Zone Mileage Charge (which applies to each 100 miles) to develop reservation and usage rates).

Deliverability; (2) Capacity; and (3) Injection/Withdrawal.[10]  Panhandle calculated refunds by comparing the subcomponents of the rates proposed in its NGA section 4 rate case (Proposed Section 4 Rates) relative to the rates Panhandle would have collected under the Commission-approved rates (Opinion No. 885 Rates), subject to the refund floor of the rates in effect before the end of the suspension period on March 1, 2020 (Pre-Existing Lawful Rates).[11]

## II.    Public Notice and Responsive Pleadings

5.      Public notice of Panhandle's refund report was issued on November 30, 2023. Interventions and protests were due as provided in section 154.210 of the Commission's regulations.[12]  Pursuant to Rule 214,[13] all timely-filed motions to intervene and any unopposed motions to intervene out-of-time filed before the issuance date of this order are granted.  Granting late intervention at this stage of the proceeding will not disrupt the proceeding or place additional burdens on existing parties.  Ameren Companies,[14] Spire Missouri Inc. (Spire), and POET Holding Company LLC and Archer Daniels Midland Company (collectively, POET/ADM) filed timely protests.  On December 20, 2023, SEMCO Energy Gas Company (SEMCO) submitted a late-filed protest.  On April 22, 2024, the Michigan Attorney General submitted comments but did not intervene.

6.      On December 27, 2023, Panhandle filed an answer to the protests, and on January 11, 2024, Ameren Companies and SEMCO jointly filed an answer to Panhandle's answer.  Rule 213(a)(2) of the Commission's Rules of Practice and Procedure[15] prohibits an answer to a protest or answer unless otherwise ordered by the decisional authority.  We accept Panhandle's answer and Ameren Companies/SEMCO's

---

[10] Panhandle's Interruptible Storage Rates include an Inventory Charge and an Injection/Withdrawal Charge.  *See* Panhandle Eastern Pipe Line Company, LP, Fourth Revised Volume No. 1, Rate Schedule IIOS, Currently Effective Rates (Version No. 23.0.0); Panhandle Eastern Pipe Line Company, LP, Fourth Revised Volume No. 1, Rate Schedule IFS, Currently Effective Rates (Version No. 10.0.0).

[11] *Panhandle E. Pipe Line Co., LP,* 168 FERC ¶ 61,208.

[12] 18 C.F.R. § 154.210.

[13] 18 C.F.R. § 385.214 (2023).

[14] Ameren Companies consist of Ameren Illinois Company and Union Electric Company d/b/a Ameren Missouri.

[15] 18 C.F.R. § 385.213(a)(2) (2023).

answer because they have provided information that assisted us in our decision-making process.

7.    Ameren Companies and POET/ADM argue that Panhandle miscalculated its refunds.  They argue that the refund floor was inapplicable to the refunds owed by Panhandle because Panhandle's NGA section 4 proceeding contained a cost allocation change that shifted dollars among the three subcomponents of Panhandle's reservation rate, eliminating the comparability between the old and new rate.[16]

8.    Ameren Companies, POET/ADM, Spire, and SEMCO assert that the Commission should direct Panhandle to use the total Proposed Section 4 Rates that customers paid compared to the total Opinion No. 885 Rates for purposes of determining the amount of refunds owed to shippers rather than use individual subcomponents of the transportation rate.[17]  Protesters state that calculating refunds on the total rate is consistent with Commission precedent.[18]  Ameren Companies state that Panhandle incorrectly determined refunds based on each rate subcomponent for a service rather than total revenue received for the service, which significantly reduced the amount of refunds owed.[19]  Ameren Companies state that Panhandle only paid refunds where the rate subcomponents of the Proposed Section 4 Rates were higher than those of the Pre-Existing Lawful Rates, resulting in no refunds for certain rate subcomponents.[20]  Ameren Companies emphasize that a shipper cannot take service without paying all of the rate subcomponents.[21]  Additionally, Ameren Companies argue that in 1996, Panhandle agreed that under NGA section 4, the Commission cannot isolate a subcomponent of rates

---

[16] Ameren Companies Protest at 2-3; POET/ADM Protest at 6.

[17] Additionally, the Michigan Attorney General requests the Commission examine the refund report and protests to ensure Panhandle issues appropriate refunds.  Michigan Attorney General Comments at 2.

[18] POET/ADM Protest at 7; Ameren Companies Protest at 12 (citing *Fla. Gas Transmission Co.*, 20 FERC ¶ 61,195, at 61,379 (1982) (*Florida Gas*)); Spire Protest at 3 (same); SEMCO Protest at 3-4 (same).

[19] Ameren Companies Protest at 4.  The Ameren local distribution companies estimate they are still owed in excess of $17 million dollars, which will be flowed through to customers consistent with retail tariff and other regulatory provisions. *Id*. at 13.

[20] *Id.* at 7.

[21] *Id.* at 3.

for separate refunding, but must use the entirety of the revenues produced by the final rates.[22]

9.      In its answer, Panhandle argues that it properly determined the refund floor. Panhandle asserts that contrary to Ameren Companies' and POET/ADM's claims, changes in rates were due to changes in volumes and there was no change to its cost allocation methodology or rate design in its NGA section 4 rate case.[23]  Panhandle also argues that Ameren Companies, SEMCO, and POET/ADM ignore Commission precedent requiring the use of the Pre-Existing Lawful Rates as the refund floor to calculate refunds.[24]

10.      Regarding whether refunds should be based upon the total rate or individual subcomponents, Panhandle defends its use of individual subcomponents.  For certain rate subcomponents, Panhandle states that the Proposed Section 4 Rates were lower than the Pre-Existing Lawful Rates; therefore, according to Panhandle, no refunds were required because shippers had already received the benefit of paying lower rates for the entire refund period.  For other subcomponents, Panhandle states that it provided a refund from the Proposed Section 4 Rates down to the Opinion No. 885 Rates when the Proposed Section 4 Rates were higher than the Pre-Existing Lawful Rates and when the Opinion No. 885 Rates were higher than the Pre-Existing Lawful Rates.[25]

11.      Panhandle states that the Commission precedent that Ameren Companies, Spire, and SEMCO rely on to support their argument that Panhandle must calculate refunds on the total rate is inapplicable.[26]  Panhandle explains that *Florida Gas* involved the Commission's regulations in 18 C.F.R. § 154.38(d)(4)(vi)(b) (2023) that required a pipeline to make a filing restating its rates to establish a new base tariff rate every 36 months in order to receive the benefits of recovery of gas purchase costs through a purchased gas adjustment clause.  According to Panhandle, such requirements were eliminated as part of restructuring.[27]

---

[22] *Id*. at 11 (citing Panhandle Eastern Pipe Line Company, Request for Rehearing, Docket No. RP92-166-000 (filed Mar. 6, 1996)).

[23] Panhandle Answer at 2-3.

[24] *Id*. at 5-6.

[25] *Id*. at 11.

[26] *Id*. at 7-8 (citing *Florida Gas*, 20 FERC ¶ 61,195).

[27] *Id*.

Docket No. RP19-78-012                                                                 - 6 -

12.     In their answer, Ameren Companies/SEMCO argue that Panhandle's methodology
for calculating refunds reduces the refund amount because it applies a subcomponent-by-
subcomponent approach instead of using the total rate.[28]  In response to Panhandle's
argument that changes in volumes, not changes in cost allocation, changed certain rates,
Ameren Companies/SEMCO state that changed volumes should not affect the evaluation
of the overall revenue (increase or decrease) that Panhandle received or that a shipper
paid.[29]

## III.     **Commission Determination**

13.     We reject Panhandle's refund report.  As discussed below, we find that Panhandle
used the appropriate refund floor in calculating refunds but did not use the appropriate
methodology in calculating refunds.  Accordingly, we direct Panhandle to file a corrected
refund report within 30 days of the date of this order, as discussed below.  We also direct
Panhandle to issue additional refunds, with interest, within 30 days of the date of this
order, as necessary.  Furthermore, Panhandle is authorized to bill the shippers who
received refunds in error with interest computed in accordance with section 154.501(d) of
the Commission's regulations within 30 days of the date of this order.[30]

### A.     **Refund Floor**

14.     We find that Panhandle used the appropriate refund floor in calculating refunds.
NGA section 4(e) provides that, after a pipeline moves a proposed rate increase into
effect subject to refund, the Commission may require the pipeline "to keep accurate
accounts in detail for all amounts received by reason of such increase," and that the
Commission may order refunds of "the portion of such increased rates or charges by its
decision found not justified."[31]  Under this provision, the Commission can only order
refunds for the difference between the pipeline's proposed increased rate and the refund
floor, defined as the pre-existing lawful rate.[32]  As the Commission stated in the 2020
Rehearing Order, the Pre-Existing Lawful Rates in this proceeding are the rates effective

---

[28] Ameren Companies/SEMCO Answer at 5.

[29] *Id*. at 6.

[30] 18 C.F.R. § 154.501(d) (2023).  Panhandle is directed to include these
calculations in its corrected refund report.

[31] 15 U.S.C. § 717c(e).

[32] *See Distrigas of Mass. Corp. v. FERC*, 737 F.2d 1208, 1224 (1st Cir. 1984)
(citing *FPC v. Sunray DX Oil Co.*, 391 U.S. 9, 22-25 (1968) ("[T]he pre-existing lawful
rate provides a refund floor in a section 4 proceeding.")).

before the end of the suspension period on March 1, 2020, and are thus the appropriate refund floor.[33]  Consistent with the 2020 Rehearing Order, Panhandle provided refunds for the amounts collected under the Proposed Section 4 Rates in excess of what Panhandle would have collected under the Opinion No. 885 Rates, but not lower than what Panhandle would have collected under the Pre-Existing Lawful Rates, which are the refund floor.  Therefore, we find that Panhandle used the appropriate refund floor in calculating refunds.

15.      We are not persuaded by Ameren Companies' and POET/ADM's arguments that Panhandle changed its cost allocation or rate design such that a different refund floor is required.  Opinion No. 885 addressed Ameren Companies' arguments opposing Panhandle's classification of costs within the Market Zone and, as discussed in Opinion No. 885, Ameren Companies failed to show that Panhandle's cost classification methodology was no longer just and reasonable.[34]  Furthermore, the Commission determined that Panhandle's rates filed in its Compliance Filing were consistent with the directives in Opinion No. 885.[35]  Moreover, the Commission previously determined the appropriate refund floor in this case.  As discussed above, in the 2020 Rehearing Order, the Commission found that the Pre-Existing Lawful Rate is the rate effective before the end of the suspension period on March 1, 2020, and is the appropriate refund floor.[36]  Ameren Companies and POET/ADM do not demonstrate why a departure from the Commission's holding is warranted here.

## B.    Method of Calculating Refunds

16.      We find that Panhandle's method of separately calculating refunds for each subcomponent of its rates departs from judicial and Commission precedent, which led to miscalculations of the refunds in this case.[37]  The refund authority under NGA section 4

---

[33] *Panhandle E. Pipe Line Co.,* 171 FERC ¶ 61,244, at P 30 (2020) (2020 Rehearing Order).  Furthermore, the Commission stated that subsequent Commission action in Panhandle's NGA section 5 proceeding after March 1, 2020 cannot reduce the refund floor.  *Id.*

[34] Opinion No. 885, 181 FERC ¶ 61,211 at P 279.

[35] Compliance Order, 183 FERC ¶ 61,148 at P 11.

[36] 2020 Rehearing Order, 171 FERC ¶ 61,244 at P 30.

[37] For example, as illustrated by Ameren Companies in Table 2 of their protest, the reservation revenues for a contract with a 600-mile block mileage charge would be determined by multiplying the billing determinants by a total rate difference between the Proposed Section 4 Rates and the Opinion No. 885 Rates (down to the refund floor) of $0.1605.  *See* Ameren Companies Protest at Table 2.  In contrast, the difference

is "limited to the amount that the utility collected under its increased rates (in effect on an interim basis) and what it would have collected under its prior lawful rates."[38]  The Commission has held that pipelines should calculate that amount by using "the entirety of the revenues derived from a rate schedule" as the standard for calculating refunds.[39]  To calculate refunds based on the entirety of the revenues from a rate schedule means that the subcomponents are to be considered together as one filed rate.[40]  Panhandle instead calculated refunds by comparing the subcomponents of the Proposed Section 4 Rates relative to what Panhandle would have collected under the Opinion No. 885 Rates, subject to the refund floor of the Pre-Existing Lawful Rates.[41]  Accordingly, we find that Panhandle's method of calculating refunds is not consistent with Commission precedent.

---

in reservation revenues for only the Market Zone Mileage Charge subcomponent (Panhandle's method) at the 600-mile block would be determined by multiplying the billing determinants by the rate difference between the Proposed Section 4 Rates and the Opinion No. 885 Rates of $0.1194.  *Id.*

[38] *Distrigas of Mass. Corp. v. FERC*, 751 F.2d 20, 25 (1st Cir. 1984).

[39] While Panhandle distinguishes *Florida Gas*, 20 FERC ¶ 61,195, more recent Commission precedent supports this proposition.  *See Kern River Gas Transmission Co.*, Opinion No. 486-C, 129 FERC ¶ 61,240, at P 195 (2009) (citing *Nw. Pipeline Corp.*, 76 FERC ¶ 61,068, at 61,425 (1996)); *Panhandle E. Pipe Line Co.*, 73 FERC ¶ 61,287, at 61,790 (1995); *see also ANR Pipeline Co.*, 85 FERC ¶ 61,231, at 61,968 (1998) ("[P]ipelines should refund the difference between the revenues actually collected from the proposed rates for each service and the greater of (1) revenues from the rates found to be just and reasonable applied to each actual service rendered during the refund period, or (2) revenues from the last clean rates applied to each actual service rendered during the refund period, plus interest.").

[40] Opinion No. 486-C, 129 FERC ¶ 61,240 at P 195; *see also E. Gas Transmission & Storage, Inc.*, 178 FERC ¶ 61,098, at P 12 (2022) ("The Commission has also held that the reservation and usage components of the rate for a particular service are properly considered as one filed rate charge.") (citing *Transcon. Gas Pipe Line Co., LLC*, 140 FERC ¶ 61,251, at P 30 (2012), *order on reh'g,* 179 FERC ¶ 61,095 (2022)); *Panhandle E. Pipe Line Co.*, 73 FERC at 61,790 (same); *Niagara Mohawk Power Corp.*, 40 FERC ¶ 61,335, at 62,021-22 (1987) (same).

[41] For example, Panhandle provided refunds only for the Market Zone Mileage Charge subcomponent of the reservation and usage rates for certain rate schedules because it was the only subcomponent where the Proposed Section 4 Rate was above the Pre-Existing Lawful Rate.  The remaining Proposed Section 4 Rate subcomponents were below the Pre-Existing Lawful Rates, and therefore Panhandle contends that no refunds

17.     We direct Panhandle to recalculate each customer's refunds on a contract-by contract-basis with the corrected interest amounts.[42]  For each contract, Panhandle will determine refunds based on a comparison of the Proposed Section 4 Rate revenues for each shipper's movement and the greater of Opinion No. 885 Rate revenues or the Pre-Existing Lawful Rate revenues for each movement, plus interest.  Furthermore, consistent with Commission policy, the refund floor shall apply to total revenues, not individual rate components.[43]  Moreover, calculating refunds based on revenues rather than rate subcomponents aligns the total payments that each shipper made to Panhandle during the refund period with the rates determined in Opinion No. 885 when considering the limitations on refunds imposed by the refund floor.

## C.     Request for Waiver

18.     With respect to Panhandle's request for a waiver to allow the refund report to be filed as of November 30, 2023, section 154.501(e) of the Commission's regulations states "[u]nless otherwise provided by the order, settlement or tariff provision requiring the refund, the natural gas company must file a report of refunds, within 30 days of the date the refund was made."[44]  Here, given that Panhandle attests to providing refunds on November 17, 2023, Panhandle's refund report was filed consistent with the Commission's regulations and Ordering Paragraph (A) of Opinion No. 885-A.  Accordingly, no waiver is required.

The Commission orders:

        (A)     Panhandle's refund report is hereby rejected, as discussed in the body of this order.

        (B)     Panhandle is directed to file a corrected refund report within 30 days of the date of this order.

        (C)     Panhandle is authorized to bill the shippers who received refunds in error with interest computed in accordance with section 154.501(d) of the Commission's regulations, within 30 days of the date of this order.

---

were required.  *See* Panhandle Answer at attach. 1.

        [42] *See* Panhandle's response to staff's January 23, 2024 data request 1.002, indicating additional refunds owed of $36,044.04.

        [43] Opinion No. 486-C, 129 FERC ¶ 61,240 at P 195.

        [44] 18 C.F.R. § 154.501.

Document Accession #: 20240528-3067      Filed Date: 05/28/2024

    (D)    Panhandle is directed to issue additional refunds, with interest, within 30 days of the date of this order, as necessary.

By the Commission.

( S E A L )

Debbie-Anne A. Reese,
Acting Secretary.

Document Content(s)

RP19-78-012.docx....................................................1